IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.:
DIVISION:

SONIA BAILES, as Personal Representative
of the Estate of JAMES BAILES, deceased,

    Plaintiff,

v.

WESTROCK CONTAINER, LLC,
a for Profit Corporation, and KEVIN REYNAUD,

    Defendants.
_____/

# COMPLAINT

COMES NOW the Plaintiff, SONIA BAILES, as Personal Representative of the Estate of JAMES BAILES, deceased, by and through her undersigned attorneys and sues Defendants, WESTROCK CONTAINER, LLC, and KEVIN REYNAUD, and alleges:

## GENERAL ALLEGATIONS

1. This is an action brought pursuant to the provisions of the Florida Wrongful Death Act, section 768.16, Florida Statutes, for the wrongful death of JAMES BAILES.

2. This is an action for damages that exceeds the sum of Fifty Thousand Dollars ($50,000.00), exclusive of costs, interest and attorney's fees.[1]

3. Plaintiff, SONIA BAILES, is a resident of Jacksonville, Duval County, Florida, and has been duly named and appointed the Personal Representative for the Estate of JAMES

---

[1] This is an action for damages in excess of $50,000, exclusive of attorneys' fees, interest and costs, and plaintiff(s) hereby demand a trial by jury; accordingly, although, to file this complaint, undersigned counsel is being required by order of the Supreme Court of Florida to contemporaneously complete a civil cover sheet with a dollar figure as an estimated amount of claim for data collection and clerical processing purposes only, the full monetary value of the damages suffered by plaintiff (s) is yet to be determined and will be decided in a verdict by the jury that judges the facts of this action in compliance with Article I, Section 21, Florida Constitution.

BAILES, referred to in this Complaint as the Decedent. The August 16, 2022, Letters of Administration and order Appointing Personal Representative are attached as composite Exhibit "A" to this complaint.

4. Plaintiff, SONIA BAILES, as Personal Representative of the Estate of JAMES BAILES, is authorized pursuant to section 768.20, Florida Statutes, to bring this wrongful death action against the Defendant on behalf of Decedent's survivors as statutory beneficiaries.

5. The beneficiaries for a recovery in this wrongful death action, who are survivors of the Decedent, and their relationships to the Decedent are as follows:

    a. SONIA BAILES, Decedent's surviving wife/spouse.

    b. A███ N███ T███████, Decedent's minor daughter (DOB: ███████)

    c. A███ D███████ B████. Decedent's minor son (DOB: ███████), and

    d. G█████ T████████ B████, Decedent's minor daughter (DOB: ███████).

6. At all times relevant to the events described, Defendant, KEVIN REYNAUD, was a resident of Jacksonville, Duval County, Florida.

7. At all times relevant to the events described, Defendant, WESTROCK CONTAINER, LLC, ("WESTROCK") was a for profit corporation doing business in the State of Florida and also owned the property and equipment at: 9469 Eastport Road, Jacksonville, Duval County, FL 32218.

8. On or about the morning of January 20, 2022, WESTROCK owned, operated and maintained an industrial facility which had crane equipment at 9469 Eastport Road, Jacksonville,

Duval County, FL 32218.

9. At all times material hereto, including on or about the morning of January 20, 2022, KEVIN REYNAUD was employed by WESTROCK and was working in the course and scope of his employment, which included operating, servicing, inspecting, repairing, replacing and maintaining the electrical systems and components of the crane equipment at 9469 Eastport Road, Jacksonville, Duval County, FL 32218.

## COUNT 1 - WESTROCK

10. Prior to and on January 20, 2022, WESTROCK had people from a company, Hoist and Crane, including the Decedent, perform repair work on its cranes.

11. The repair work done by people from Hoist and Crane, including the Decedent prior to and on January 20, 2022, did not involve replacing or rewiring the electrical systems or components of the cranes.

12. Prior to January 20, 2022, WESTROCK caused or allowed the traverse motor and brake electrical power supply at the reverse contact switch on the blue traverse trolley of the 60 ton overhead bridge crane to be miswired through its agents and/or employees.

13. Prior to January 20, 2022, WESTROCK knew or should have known the miswiring would allow one of the power lines to the brake to be electrically hot, without an electric current flowing, even when the brakes were not activated.

14. Prior to January 20, 2022, WESTROCK knew or should have known the miswiring would be hidden from the people at Hoist and Crane working on the cranes, including the Decedent.

15. Prior to January 20, 2022, WESTROCK knew or should have known the miswiring would not be known to the people at Hoist and Crane working on the cranes, including the

Decedent.

16. Prior to January 20, 2022, WESTROCK knew or should have known the miswiring violated the crane manufacturer's wiring design.

17. Prior to January 20, 2022, WESTROCK knew or should have known the miswiring violated industry standards.

18. Prior to January 20, 2022, WESTROCK knew or should have known the miswiring was an unreasonably dangerous condition, including for the people from Hoist and Crane working on the cranes, including the Decedent.

19. Prior to January 20, 2022, WESTROCK knew or should have known the miswiring could expose the people from Hoist and Crane working on the cranes, including the Decedent, to electrocution and death.

20. The people from Hoist and Crane working on the cranes, including the Decedent, on January 20, 2022, were working on brake pads, but were not retained to replace or rewire the electrical systems or components of the cranes.

21. At all material times hereto, WESTROCK owed one or more of the following duties to the people at Hoist and Crane working on the cranes, including the Decedent, to:

    a. provide a safe environment for the work to be done,

    b. not allowing its crane to be miswired,

    c. not miswiring its crane,

    d. not violate industry standards regarding the wiring of its crane,

    e. not miswiring its crane in violation of the crane manufacturer's wiring design,

    f. not create a foreseeable zone of risk,

    g. not have an unreasonably dangerous mode of operation for its facility,

  h. safely construct and design its facility,

  i. provide a safe alternative for the work to be done at its facility, and

  j. warn of the danger on its crane due to its crane being miswired.

 22. At all material times hereto, WESTROCK breached one or more of the following duties to the people at Hoist and Crane working on the cranes, including the Decedent, by:

  a. failing to provide a safe environment for the work to be done,

  b. allowing its crane to be miswired,

  c. miswiring its crane,

  d. violating industry standards regarding the wiring of its crane,

  e. miswiring its crane in violation of the crane manufacturer's wiring design,

  f. creating a foreseeable zone of risk,

  g. having an unreasonably dangerous mode of operation for its facility,

  h. failing to safely design and construct its facility,

  i. failing to provide a safe alternative for the work to be done at its facility, and

  j. failing to warn of the danger on its crane due to its crane being miswired.

 23. WESTROCK knew or should have known that one or more of its breaches of duties owed to the people from Hoist and Crane working at its facility, including the Decedent, would cause injuries and/or death to people working at its facility, including the Decedent.

 24. WESTROCK'S failure to appropriately fulfill one or more of the duties owed to the people from Hoist and Crane working at its facility, including the Decedent, was the proximate cause of the Decedent's death.

 25. As a result of WESTROCK'S negligence, the Decedent's survivors have suffered losses, injuries and damages.

26. As a result of WESTROCK'S negligence, SONIA BAILES, surviving spouse, has suffered lost support and services, future loss of support and services, past and future loss of companionship and protection, and past and future mental pain and suffering. These losses are permanent and continuing.

27. As a result of WESTROCK'S negligence, ███████, surviving minor child, has suffered lost support and services, future loss of support and services, lost parental companionship, instruction, and guidance in the past and in the future and past and future mental pain and suffering. These losses are permanent and continuing.

28. As a result of WESTROCK'S negligence, ███████, surviving minor child, has suffered lost support and services, future loss of support and services, lost parental companionship, instruction, and guidance in the past and in the future and past and future mental pain and suffering. These losses are permanent and continuing.

29. As a result of WESTROCK'S negligence, ███████, surviving minor child, has suffered lost support and services, future loss of support and services, lost parental companionship, instruction, and guidance in the past and in the future and past and future mental pain and suffering. These losses are permanent and continuing.

30. As a result of WESTROCK's negligence, medical or funeral expenses due to the Decedent's death were incurred and paid by a survivor or paid on behalf of the Estate and are also recoverable as damages in the instant action, while the Estate has also suffered the loss of prospective net accumulations.

WHEREFORE, SONIA BAILES, as Personal Representative of the Estate of JAMES BAILES, on behalf of the survivors and on behalf of the Estate, demands judgment for damages

against the Defendant, WESTROCK, for all damages allowed pursuant to law, with costs of this action, interest, a trial by jury and any other relief the Court deems just and proper.

## COUNT II – KEVIN REYNAUD

31. Prior to and on January 20, 2022, KEVIN REYNAUD had people from a company, Hoist and Crane, including the Decedent, perform repair work on its cranes.

32. The repair work done by people from Hoist and Crane, including the Decedent prior to and on January 20, 2022, did not involve replacing or rewiring the electrical systems or components of the cranes.

33. Prior to January 20, 2022, KEVIN REYNAUD caused or allowed the traverse motor and brake electrical power supply at the reverse contact switch on the blue traverse trolley of the 60 ton overhead bridge crane to be miswired through its agents and/or employees.

34. Prior to January 20, 2022, KEVIN REYNAUD knew or should have known the miswiring would allow one of the power lines to the brake to be electrically hot, without an electric current flowing, even when the brakes were not activated.

35. Prior to January 20, 2022, KEVIN REYNAUD knew or should have known the miswiring would be hidden from the people at Hoist and Crane working on the cranes, including the Decedent.

36. Prior to January 20, 2022, KEVIN REYNAUD knew or should have known the miswiring would not be known to the people at Hoist and Crane working on the cranes, including the Decedent.

37. Prior to January 20, 2022, KEVIN REYNAUD knew or should have known the miswiring violated the crane manufacturer's wiring design.

38. Prior to January 20, 2022, KEVIN REYNAUD knew or should have known the

miswiring violated industry standards.

39. Prior to January 20, 2022, KEVIN REYNAUD knew or should have known the miswiring was an unreasonably dangerous condition, including for the people from Hoist and Crane working on the cranes, including the Decedent.

40. Prior to January 20, 2022, KEVIN REYNAUD knew or should have known the miswiring could expose the people from Hoist and Crane working on the cranes, including the Decedent, to electrocution and death.

41. The people from Hoist and Crane working on the cranes, including the Decedent, on January 20, 2022, were working on brake pads, but were not retained to replace or rewire the electrical systems or components of the cranes.

42. At all material times hereto, KEVIN REYNAUD owed one or more of the following duties to the people at Hoist and Crane working on the cranes, including the Decedent, to:

    a. provide a safe environment for the work to be done,

    b. not allowing the crane to be miswired.

    c. not miswiring the crane,

    d. not violate industry standards regarding the wiring of the crane,

    e. not miswiring the crane in violation of the crane manufacturer's wiring design,

    f. not create a foreseeable zone of risk,

    g. not have an unreasonably dangerous mode of operation for the facility,

    h. safely construct and design the facility,

    i. provide a safe alternative for the work to be done at the facility, and

    j. warn of the danger on the crane due to the crane being miswired.

43. At all material times hereto, KEVIN REYNAUD breached one or more of the following duties to the people at Hoist and Crane working on the cranes, including the Decedent, by:

    a. failing to provide a safe environment for the work to be done,

    b. allowing the crane to be miswired,

    c. miswiring the crane,

    d. violating industry standards regarding the wiring of the crane,

    e. miswiring the crane in violation of the crane manufacturer's wiring design,

    f. creating a foreseeable zone of risk,

    g. having an unreasonably dangerous mode of operation for the facility,

    h. failing to safely design and construct the facility,

    i. failing to provide a safe alternative for the work to be done at the facility, and

    j. failing to warn of the danger on the crane due to the crane being miswired.

44. KEVIN REYNAUD knew or should have known that one or more of his breaches of duties owed to the people from Hoist and Crane working at its facility, including the Decedent, would cause injuries and/or death to people working at its facility, including the Decedent.

45. KEVIN REYNAUD's failure to appropriately fulfill one or more of the duties owed to the people from Hoist and Crane working at the facility, including the Decedent, was the proximate cause of the Decedent's death.

46. As a result of KEVIN REYNAUD's negligence, the Decedent's survivors have suffered losses, injuries and damages.

47. As a result of KEVIN REYNAUD's negligence, SONIA BAILES, surviving spouse, has suffered lost support and services, future loss of support and services, past and future

loss of companionship and protection, and past and future mental pain and suffering. These losses are permanent and continuing.

48. As a result of KEVIN REYNAUD's negligence, ███████████████, surviving minor child, has suffered lost support and services, future loss of support and services, lost parental companionship, instruction, and guidance in the past and in the future and past and future mental pain and suffering. These losses are permanent and continuing.

49. As a result of KEVIN REYNAUD's negligence, ███████████████, surviving minor child, has suffered lost support and services, future loss of support and services, lost parental companionship, instruction, and guidance in the past and in the future and past and future mental pain and suffering. These losses are permanent and continuing.

50. As a result of KEVIN REYNAUD's negligence, ███████████████ ████████, surviving minor child, has suffered lost support and services, future loss of support and services, lost parental companionship, instruction, and guidance in the past and in the future and past and future mental pain and suffering. These losses are permanent and continuing.

51. As a result of KEVIN REYNAUD's negligence, medical or funeral expenses due to the Decedent's death were incurred and paid by a survivor or paid on behalf of the Estate and are also recoverable as damages in the instant action, while the Estate has also suffered the loss of prospective net accumulations.

WHEREFORE, SONIA BAILES, as Personal Representative of the Estate of JAMES BAILES, on behalf of the survivors and on behalf of the Estate, demands judgment for damages against the Defendant, KEVIN REYNAUD, for all damages allowed pursuant to law, with costs of this action, interest, a trial by jury and any other relief the Court deems just and proper.

DATED this 21st day of March, 2023.

        **COKER LAW**

        /s/ Matthew N. Posgay
        **MATTHEW N. POSGAY, ESQUIRE**
        Florida Bar No. 0046590
        136 East Bay Street
        Jacksonville, Florida 32202
        (904) 356-6071
        (904) 353-2425 Facsimile
        MNP@cokerlaw.com   (Primary)
        DAB@cokerlaw.com
        SML@cokerlaw.com
        AJK@cokerlaw.com

        *Attorney for Plaintiff*

        And

        **RADLOFF AND RADLOFF, P.A**.

        */s/ Edward T. Radloff*
        **EDWARD T. RADLOFF, ESQ.**
        Florida Bar No. 477788
        2051 Art Museum Dr. Ste 200
        Jacksonville, FL 32207-2583
        (904) 398-2200
        (904) 398-2300 Facsimile
        Ed.Radloff@comcast.net

        *Co-counsel for Plaintiff*

Doc # 2022214243, OR BK 20401 Page 1618, Number Pages: 1
Recorded 08/17/2022 04:53 PM, JODY PHILLIPS CLERK CIRCUIT COURT DUVAL COUNTY

Case 3:23-cv-00601-TJC-MCR   Document 4   Filed 05/19/23   Page 12 of 13 PageID 74

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

CASE NO.: 16-2022-CP-000911

DIVISION: PR-B

IN RE: ESTATE OF

JAMES DWAYNE BAILES,
   Deceased.
_____/

## LETTERS OF ADMINISTRATION

TO ALL WHOM IT MAY CONCERN

WHEREAS, James Dwayne Bailes a resident of Duval County, Florida, died on January 20, 2022 ("Decedent"), owning assets in the State of Florida, and

WHEREAS, Sonia Jean Bailes has been appointed personal representative ("Personal Representative") of the Decedent's estate ("Decedent's Estate") and has performed all acts prerequisite to issuance of Letters of Administration in the estate,

NOW, THEREFORE, I, the undersigned circuit judge, declare Sonia Jean Bailes duly qualified under the laws of the State of Florida to act as Personal Representative of Decedent's Estate, with full power to administer the Estate according to law; to ask, demand, sue for, recover and receive the property of the Decedent; to pay the debts of the Decedent as far as the assets of the Estate will permit and the law directs; and to make distribution of the Estate according to law.

ORDERED on the __16__ day of __Aug__, 2022.

_____
Hon. Thomas Beverly, Circuit Judge

STATE OF FLORIDA
DUVAL COUNTY
I, UNDERSIGNED Clerk of the Circuit & County Courts, Duval County, Florida, DO HEREBY CERTIFY the within and foregoing, consisting of __1__ pages, is a true and correct copy of the original as it appears on record and file in the office of the Clerk of Circuit & County Courts of Duval County, Florida.
WITNESS my hand and seal of Clerk of Circuit & County Courts at Jacksonville, Florida, this the ___ day of ___ A.D., 20__
Clerk Circuit and County Courts
Duval County, Florida
By_____
   Deputy Clerk

CM-28150-0458                                                    EXHIBIT A

IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT,
IN AND FOR DUVAL COUNTY,
FLORIDA

CASE NO.: 16-2022-CP-000911

DIVISION: PR-B

IN RE: ESTATE OF

JAMES DWAYNE BAILES,

Deceased.
_____/

## ORDER APPOINTING PERSONAL REPRESENTATIVE
(testate – single)

On the petition of Sonia Jean Bailes for administration of the above estate ("Estate"), the Court finding that the Decedent, James Dwayne Bailes, died on January 20, 2022, and that Sonia Jean Bailes, is entitled to appointment as personal representative by reason of being an heir-at-law of the decedent, and is qualified to be personal representative "Personal Representative", it is

ADJUDGED that Sonia Jean Bailes is appointed Personal Representative of the Decedent's Estate, and that upon taking the prescribed oath, filing designation of resident agent and acceptance, and entering into bond in the sum of $ _0_ , Letters of Administration shall be issued.

ORDERED on this __16__ day of __Aug__, 2022.

_____
Hon. Thomas Beverly, Circuit Judge

STATE OF FLORIDA
DUVAL COUNTY
I, UNDERSIGNED Clerk of the Circuit & County Courts, Duval County, Florida, DO HEREBY CERTIFY the within and foregoing, consisting of __1__ pages, is a true and correct copy of the original as it appears on record and file in the office of the Clerk of Circuit & County Courts of Duval County, Florida.
WITNESS my hand and seal of Clerk of Circuit & County Courts at Jacksonville, Florida, this the ___ day of ___ A.D., 20__
Clerk Circuit and County Courts
Duval County, Florida
By _____
Deputy Clerk

CM-28150-0458